Oh yes, oh yes, oh yes. The Honorable Health Board of the 5th District of St. Illinois is now in session. Please be seated. Good morning, Counsel. How are you all today? Good morning. 524-1237 I've got Ms. Sherwood and is it Mr. Helen? Squall. Squall, okay. I forgot to get my, get straight this morning. Sorry about that. And as the clerk was mentioning, we have a cross appeal in this, so I believe Ms. Smallwood, you ready to proceed? Sherwood. Sherwood. Huh? Sherwood. Sherwood. I'm sorry. Okay. I apologize. All right. So, Ms. Sherwood, are you ready to proceed? Yes, Your Honor. Then go right ahead. Good morning, Your Honors, and may it please the Court and Counsel, I am Ashley Sherwood representing the appellant cross-appealee Tammy Michl. This appeal arises from numerous contempt petitions that were filed by both parties in this cause since the entry of the party's marital settlement agreement on April 6, 2023. Tammy has primarily raised one central issue on her appeal today, whether the circuit court abused its discretion in failing to issue a rule to show cause against Ryan for failure to abide by terms outlined in the party's marital settlement agreement. Indirect civil contempt is contempt that occurs outside the presence of the trial court when a party fails to do something as ordered by the trial court that then results in a loss of a benefit or advantage to the opposing party. The Illinois Appellate Court has stated in Ray Marriage-Carrouse that when alleging civil contempt, the petitioner's burden is simply to prove the first element, which is that the alleged contender has violated an existing court order. Once the petitioner satisfies this burden, the burden then shifts to the alleged contender to then show why his or her noncompliance was either willful or more continuous. Tammy has clearly met that burden in this case. Tammy's first allegation against Ryan was her failure to pay a tuition payment for their minor child, Gracie, while she attended Eastern Illinois University. Tammy testified that the party's daughter, Gracie, was attending Eastern Illinois University during the summer of 2023. Tammy testified that when Gracie was to start class that summer, the tuition payment still had not been paid by Ryan. Tammy testified that she had to advance that payment to Gracie so that Gracie could continue to attend the class and graduate on time. Tammy further testified that at the time of the hearing, Ryan had not reimbursed her for that payment. The next claim that Tammy alleges against Ryan is her failure to pay an accountant's bill that was incurred during the party's marriage. Tammy testified that an accountant's bill was incurred during the party's marriage for the preparation of the party's 2021 and 2022 tax returns. Tammy also testified that it was routine during the course of the marriage for Ryan to primarily handle any matters with the accountant. Tammy testified that Ryan attended all of the meetings with the accountant and that she personally never attended a meeting, nor did she sign any agreements with the accountant himself. Tammy also testified that the first couple invoices that she received from the accountant were addressed to not only her, but both her and Ryan. It was only later on in the course of dealing that the invoices became solely addressed to her. At this point, it's Tammy's position that because the debt was incurred prior to the judgment of dissolution of marriage being entered in this case, the accountant's bill would be presumed a marital debt that Ryan would be 100% responsible for under the provisions of the party's marital settlement agreement. Counsel, let me interrupt you, though. What effect does the language in the marital settlement agreement regarding the global settlement language, what impact does that have on this claim for contempt for actions that occurred prior to the entry? It would be my position that the global settlement language would not affect any petitions for contempt that Tammy may pursue against Ryan after the judgment was entered. I understand that this issue may have arisen during the contemplation of the marital settlement agreement, but I don't believe that that bars her from pursuing any contempt petition against Ryan for him not failing to pay things that he was ordered to pay under the marital settlement agreement. Is there a case that you cite for that proposition? I do not have one, Your Honor. Okay. The third claim that Tammy alleged against Ryan was for unpaid medical bills that were incurred for the children during the proceedings of the marriage. Tammy testified that these bills were incurred prior to the judgment of dissolution being entered, and that because those bills were incurred prior to the judgment, Ryan was to be 100 percent responsible for payment of those bills under the party's marital settlement agreement. Tammy testified that at the time of the hearing, she had made calls to the children's medical providers and that the providers had informed her that the bills had gone to collections. Tammy then testified at the hearing that it was still her understanding that the bills were in collections and that they had not been paid by Ryan at the time of the hearing. Tammy specifically testified as to an eye doctor bill incurred by Dr. Niebergy for one of the children's eye exams. She testified that she also had to advance payment for this bill on behalf of Ryan as well so that the children could get their eye exams, and that she had requested reimbursement from Ryan for this specific eye bill, and he never reimbursed her for that. Tammy's burden was simply to prove that Ryan had violated an existing order by the court, namely the party's marital settlement agreement. Tammy certainly met this burden through her testimony of all of these unpaid bills that Ryan was ordered to pay that he did not. At this point, the burden would have been shifted to Ryan to prove why his violations of the marital settlement agreement were neither willful nor continuous, and at that point, the trial judge should have issued a rule to show cause against him, giving him that opportunity to prove that his violations were neither willful nor continuous. At that point, the judge did not issue a rule to show cause and instead dismissed Tammy's petition for contempt. In the case of In Re, the Marriage of Michele, the court has stated that an abuse of discretion occurs only where no reasonable person would agree with the view adopted by the lower courts. Tammy clearly met her burden here, proving Ryan's violations of nonpayment, which was in violation of the party's marital settlement agreement. At this point, the court should have issued a rule to show cause against Ryan, and they did not. No reasonable person sitting in a trial court's position would have found otherwise in this instance. It was an abuse of discretion for the trial court to fail to issue a rule to show cause against Ryan for his nonpayment of fees ordered for him to pay under the party's marital settlement agreement. I would like to turn to the issues that Ryan raises in his cross-appeal. The first issue that Ryan raises is whether the trial court committed reversible error by implicitly denying Ryan's motion to strike Tammy's amended petition for contempt. We would argue that the court did not commit reversible error in denying such a motion. It was certainly necessary for the court to have a full hearing on Tammy's amended petition for contempt because there were clearly ambiguities in the marital settlement agreement as to certain provisions and what that language explicitly meant. It was obvious from prior pleadings and testimony in the matter that certain provisions of the party's marital settlement agreement were not clear to either party. Tammy's petition asked for Ryan to be held in contempt of court for not paying bills that were clearly ordered of him to pay under the party's marital settlement agreement, and as such, the court did not commit error when they denied Ryan's motion to strike. But even if this court were to find that Tammy's amended petition should have been stricken and Ryan's motion to strike should have been granted, the error committed by the court would not be reversible, but instead it would be harmless. Under Castillo v. Stevens, reversible error occurs only when it affects the outcome of a trial. Here, the court ultimately denied Tammy's petition for contempt anyway, so the outcome would have been the same whether the petition proceeded to a full hearing or not. As to the second issue raised in Ryan's appeal, which is whether the court abused its discretion in failing to award Rule 137 sanctions, the appellant would take the position that the trial court did not abuse its discretion in failing to award these sanctions. Ryan contends that Tammy's claims were frivolous on their face as a matter of law and that such sanctions should have been found to be against her. But a claim is only frivolous on its face when it's made without reasonable cause and the frivolousness is readily ascertainable on its face, and that proposition comes from Conexal Court v. Icon Systems, LLC. Ryan names four specific claims made by Tammy that he alleges were frivolous. One, that Tammy claims that Ryan failed to pay for their daughter's tuition bill. As already established, that was clearly ordered of him by the marital settlement agreement and any non-payment would clearly have been a violation of the party's marital settlement agreement and would not be a frivolous claim on behalf of Tammy. As to the second claim, that Ryan failed to pay the accountant's bill, again, this accountant's bill was incurred during the marriage prior to the judgment of dissolution. It was originally sent out and it was originally titled in both of their names, and as such, this was a marital debt that Ryan was ordered to pay under the party's marital settlement agreement. The third claim that Ryan names that was frivolous that Tammy claimed against him was that the party's marital settlement agreement required each of them to pay their post-separation expenses that were titled in their names fully. But the matter of the fact is that while Tammy may have been ordered to pay the Sam's Club card under the marital settlement agreement, Ryan cannot simply have it both ways. He cannot say that Tammy was required to pay the Sam's Club card and that each party was required to pay their post-separation expenses, but then incur post-separation expenses on that Sam's card and expect Tammy to be responsible for those. As to the fourth allegation that Ryan claims was frivolous, is the claim that Ryan did not pay an auto repair bill that was associated with Gracie's car. The marital settlement agreement clearly states that Ryan should be responsible for all indebtedness and insurance associated with Gracie's car. While it does not specifically name auto repair bills, Tammy had testified that a mechanics lien was put on the car as a result of the auto repairs that were done and as such a mechanics lien is presumably indebtedness on a car that Ryan would be responsible for according to the marital settlement agreement. There is certainly no provision in that agreement that would require Tammy to be responsible for that. Tammy's claims were not frivolous on their face and that frivolousness was not readily ascertainable on its face and as such the trial court had complete discretion in choosing whether to award or deny sanctions in this case and they did not abuse this discretion by choosing to deny sanctions. And as to Ryan's third and final issue raised on his cross appeal, the trial court again did not abuse its discretion in failing to award Ryan his attorney's fees. When contempt proceedings do not result in a finding of contempt against a party, attorney's fees may not be awarded absent of an express statutory authority to do so. And that proposition comes from Edwards versus Keekin Memorial Hospital. Here the court rather found Tammy to be in contempt of the court. A rule of show cause was issued against her but she was never actually found to be in contempt and a contempt finding was never issued against her. The rule of show cause was issued against Tammy for failing to deliver deeds to Ryan in a timely fashion. But Tammy's failure to do so was not without justification here. Tammy stated in her pleading that she reasonably was fearful that she would not receive the second equalization payment allotted to her under the marital settlement agreement if she did not deliver the deeds. This payment she relied on to support her and her children. She was equally justified in failing to deliver the deeds to Ryan because she equally feared that delivery of the deeds would jeopardize her ability to receive this payment. Ryan has failed to show how Tammy's failure to deliver the deeds was without justification and because of this there was no contempt finding against Tammy. The trial court was not required to award his attorney's fees because there was no contempt finding and there was no express statutory authority allowing the trial court to do so. As such the trial court did not abuse its discretion when it required the parties to bear their own attorney's fees in this case. Let's talk about, if you can talk about the standard of review. In my recollection there are several court cases on these couple of dockets so they kind of run together.  That's okay. How many rules of show cause or petitions for rule of show cause did your client file against Mr. Michael? I believe there was 10. Okay. And again if my recollection is correct I think the trial court pointed out during that hearing or at the end of that hearing or some point that he had basically sat through and dealt with this divorce from day one to the last day and was well aware that these parties, let's just say were less than amicable. That might be a nice way to put it. Cats and dogs fighting may be a better term to use. Yeah, correct. So I think again if my recollection is correct when making the ruling the trial court pointed out he knew the history of this case, knew the history of the parties. Basically, let's be honest, kind of called them on the carpet for their behaviors during this entire process and then made his ruling not holding, not issuing the rule, not holding her in contempt, not strike, basically making that ruling. So how, I mean that's the trial court's discretion to take all that into account when making the ruling and that applies to both parties really. I'm just asking you first. That's how you might respond to that. Could you rephrase your question? Well, it's basically how do you get around, not get around, but the trial court listened to everything, took everything into consideration and made its ruling. How is that not, how did he abuse his discretion as it applies to your issue? Well, as stated earlier, an abuse of discretion occurs when no reasonable person sitting in the trial court's view would have ruled the same way given the evidence and the record before it. And I think even though he had all of the evidence before him, the evidence was blatantly obvious that Ryan had violated certain provisions of the marital settlement agreement, namely the allegations that were at issue in Tammy's last amended petition for contempt that she had filed, which I believe is primarily what the judge was focusing on during the June 25, 2024 hearing. So even though he did have all the evidence in front of him and he was on the case from start to finish, that doesn't mean he can't rule, that doesn't mean he couldn't abuse his discretion when ruling if the evidence would support a finding any other way, which we would argue that it would because the evidence before the court and the record truly showed and supported that Ryan had violated provisions of that marital settlement agreement. But Counsel, you yourself said the marital settlement agreement was ambiguous as to certain issues. Correct, Your Honor, and that's why we don't believe that the trial court abused its discretion as to Ryan's claim whenever they, or committed a reversible error as to Ryan's claim whenever they denied his motion to strike. Because we believe there were ambiguities in the marital settlement agreement, it was necessary for the trial judge to have a full hearing on Tammy's petition for contempt to be able to sort out what ambiguities were at issue and to hear out both parties on what they interpreted those terms to mean. But I think it's, and I'm optionally opposed when Counsel is going to be able to give his argument, but I think that's part of his argument was that she very well knew that what she had alleged in that motion or cause of that petition was just not true. Well, there were certain exhibits attached to the petition that arguably Ryan was not to be responsible for under the marital settlement agreement. Ultimately, the issues discussed at trial were only as to the issues that Ryan could theoretically be held responsible for, such as the tuition payment and the marital debts that were incurred during the marriage. And even in the appellate's final arguments submitted to the court, I think they narrowed down the issues that Ryan reasonably could have been held in contempt for. And this was after nine previous rule-to-show causes. Correct. So at this point, Your Honors, we are asking the court to reverse the lower court's ruling as it stands in deciding not to issue a rule-to-show cause against the cross-appellant Ryan, and we are asking that the court affirm the trial court's ruling as to all issues raised in Ryan's cross-appeal. Thank you. Thank you, counsel. Mr. Vaughn-Henry, before we let you go, ma'am, do you have any questions? No questions. I look forward to hearing from you. Thank you. All right, Mr. Smallhorn. All right. Ready for me? Oh, absolutely. All right. May it please the court, just to get right to the point of the question. Do you want to do me a favor? Just recognize yourself for the record. Oh, yeah, I'm sorry. You're being recorded. I'm just so excited to talk to you about this post-dissolution proceeding. I think Jacob Smallhorn, our counsel for Ryan Michael, the respondent cross-appellant in this case, and I've been in this one since the beginning. Just to give you a little bit of-  You know what? I like my client, though, which is it does happen occasionally. Judge McHaney was originally on the case until he took the bench, and then Judge Parker took over, and I think we were the last case before he retired. And you got confused about Mr. Heller because he was the attorney that actually represented Ms. Michael, the plaintiff in the underlying case, and he retired as well. So this is really a case about retirements, I think. Just to get right to the underlying issues here, I think that we were basically, I think, the last case Judge Parker had, and he promised us that he was going to get this done before he retired so we didn't have to go in front of yet another judge. And I did put in my statement of facts, and I know that I'm discouraged from reading them to you at all, but there were 10 petitions by the plaintiff for contempt throughout the duration of the proceedings. And in the meantime, my client filed two. One of them was to compel the plaintiff, Tammy, to deliver deeds so that my client could make the second equalization payment pursuant to the terms of the MSA. She was withholding the deeds. This is a case about a farmer who, in his divorce settlement, negotiated to keep the farm in exchange for paying, I think it was a million and a half dollars to the petitioner. And at the time, Ryan filed his post-judgment petition for contempt because, quite frankly, I hate petitions for contempt. I try not to do them. They're difficult, and courts usually do the exact kind of thing Judge Parker did, and they try to tone down the rhetoric and get the parties to cooperate more effectively. So along those lines, let me interrupt you. Yeah. I think that I'm going to steal Justice Lewis' question. How has it been an abuse of discretion? Yeah, I think this was an issue of Judge Parker going to, and I have to say this too, I really like and respect Judge Parker. It's difficult to file an appeal on anything he did. He was a great judge in the case in a lot of ways. But Judge Parker, I think, went too far in trying to be fair. Our written closing arguments are in the record on appeal, and I said in it, you know, it's frequent that trial court judges try to be King Solomon and split the baby to try to get the parties to work together. But in this particular case, where you have one side filing ten petitions for contempt and none of them really ever going anywhere or doing anything, filing petitions for contempt that make no sense, do not have any real basis to even be heard by the court, and then you have the other side, yes, he filed a petition for contempt. A rule was issued because it was unambiguous that she was required to deliver these deeds within five days of being requested so that he could complete her refinance to pay her his money. And then to add insult to injury, one of those ten petitions was the delay in her turning over the deeds resulted in him not being able to pay the second equalization payment on time because he didn't have the documents necessary to complete the refinance to give her her money, and they filed a rule. They filed a petition for rule on it. And I think that, to just get right to the point of answering your question, I think that when you review the testimony of Tammy Michael from the hearing on the petition for rule, you can see from her testimony, and if you don't want to read the whole thing, I don't blame you, we've got a lot of cases, I put the quotes in my argument. She knew what was going on. She knew that she had filed a petition for rule asking to hold Ryan in contempt for things that were unambiguously, explicitly, in some instances, excluded from the marital settlement agreement. And that's why we filed a cross-appeal. Quite frankly, we wouldn't have filed an appeal and we wouldn't have, you know, we would have let this move forward if they had not filed an appeal themselves. But I think here you have one of those few instances where it's just clear from the record that Tammy knew she violated the court's order, the marital settlement agreement, which is part of the court's order. She knew it independent of her attorney. And in my argument, on page six, I just put kind of a general flavor of, I asked the question, then why would you have asked the court to hold him in contempt when it doesn't require him to pay that? And that's with regard to talking about, I think, a car bill. I don't know that what he can be held in contempt for or not. I just know he doesn't pay the things he's supposed to pay. Well, that's not a basis for filing a rule. And what we needed in this case was for the judge to say you can't keep filing frivolous pleadings. Was either party awarded attorney's fees under 508B? No, they weren't. Neither party was awarded attorney fees in the case. And, in fact, the marital settlement agreement dealt with the payment of attorney fees. Each party was required to pay their own fees. This was just for the fact that we had to defend all of these post-judgment petitions for rule, that she frustrated the purpose of the refinance and the process. And, in fact, even happened, I know this is irrelevant, but an important side note, even during the pendency of their appeal, they filed another rule. So this is an issue that's ongoing after Judge Parker. But certainly that can be addressed by the trial court. It certainly can. If it's a pattern of behavior, the trial court can address that in the future. And I guess what I would say in response to that, Your Honor, with all due respect, it had already been an established pattern by this point, and it needed to be rectified. But you agree, counsel, that during a divorce things are very high stress and tensions are high, and then there's a marital settlement agreement, and it takes some time to execute the marital settlement agreement and make sure that all the terms are complied with. I think courts are generally understanding of those types of things, right?  If it's a pattern of abuse, then that's certainly something that I'm sure you'll raise with the next judge, right? And all I'm saying, Your Honor, is there was already a pattern of abuse. And one thing about this case that was absolutely unique to me, I've not had this experience before, you have a client admitting on the witness stand that they knew they filed a petition for contempt and asked to be paid for things they knew they weren't entitled to be paid pursuant to the MSA. I'm used to cases where they go, well, I'm just doing what my attorney told me. Well, that's not what happened here. This was a case where she filed for things that she thought he should be responsible for, but were clearly, unambiguously excluded in the MSA. You heard about this car repair bill, because that stuck out in my mind with regard to the appellant's argument. I mean, it says, embeddedness, car loan, and insurance. It doesn't say an automotive repair bill that was incurred without his permission or anything like that. It's clear. And I don't know where the failure was in dealing with that issue, but it was very clear, and she knew that it wasn't in there. And she said, I just thought he should have to pay. And I would encourage the court to look at the marital settlement agreement. It took us a long time to draft this. It was carefully and thoughtfully drafted, and it is unambiguous. It contains global settlement language. It says explicitly that as of the date of the signing of the MSA, they're each responsible for their own debts, except for what's explicitly stated in there. And I keep saying the same words, because I just can't be clear enough, that the duties and rights and responsibilities of the parties were clearly delineated in the MSA. And I think the court, while I understand and agree with you, it's a big hurdle, right, to say that Judge Parker committed abuse of discretion here. But I think that in this particular instance, when you read the transcripts of the hearing and you see the numerous instances where Tammy said, yeah, I knew this wasn't in there, but we went forward with it anyways because I thought that was what was right. That's not okay, and it shouldn't. I don't think any reasonable judge would agree with that. And I would say Judge Parker is a reasonable judge. I think that, again, he just went too far in this instance to try to tone down the situation instead of punish what was clearly contemptuous conduct. Which apparently didn't work, because you said there's been a rule of a vision filed since. Didn't work, but hopefully he is enjoying the sun in Florida right now, so it worked for him. You all made him off the bench. You made him off the bench. And like I said, I think that what he was trying to do was admirable, but I don't think that it fit with the facts of the case. When you have someone sitting on the witness stand saying, I knew this was wrong, I did it anyways. I mean, this issue with the deeds. I don't want to get into a lame game about it, but there were some issues that are outlined in my petition for contempt regarding those deeds where we did reach agreements in an attempt to try to deal with these issues outside of court, as you do in these types of cases. Nobody wants to go argue a contempt petition, but we were told by Mr. Heller that deeds were waiting in the mail. And then only after we had called Judge Parker, entered an agreement that we were going to continue a hearing, Mr. Heller tells me, no, we are withholding these deeds until we get a security interest in this refinance of the mortgage. Counsel, I'm going to stop you there. I mean, that happens all the time too, right? There has to be basically an immediate transfer, because once you sign off on the deeds and you send it to the other party, there's no guarantee you can get your check, right? Yeah, but it was explicit in the MSA that there was no security interest, and you can't do that with a refinance. And I understand that, but there are generally some mechanisms in place for execution of MSAs that don't lay out necessarily in the MSA. There's always a step or two you have to take. We laid that out, actually, in here. We said she has to deliver it within five days. I understand. Because we were concerned that of just this. I understand, and I did read the MSA, so. Well, and I assume you guys did. What I did want to say real quick, though, was that you can also look at this as Judge Parker. He says in his final ruling that there were numerous agreements and continuances. Well, I'm saying some of those agreements were under essentially false pretenses. And so there is an element where he may not have just been aware of all of the goings-on in the case, even though I will say I attached the e-mails and things to the contempt petition itself. I talked more than I thought. Do you guys have questions? I want to make sure there's no issues that I haven't addressed. Questions? No, thank you. Just a couple. The MSA was reached through mediation, correct? Yeah, we did mediation. Were the attorneys involved in the mediation and drafting the MSA, or was that the mediator who helped prepare the MSA? So it was Judge Radcliffe did the mediation, and he did a memorandum that the two parties signed. And then we hammered out the terms of the MSA that's in the record within a day or two, because we really did negotiate all issues. There was a third party involved as well, too. They had filed a third-party complaint against Ryan's parents because they had a farming operation. So they were involved in it as well. So all three parties were represented by counsel and participated in the drafting and execution of that document. Thank you. Anything else? No. All right, thank you. All right, thank you. Ms. Sherwood? Ms. Sherwood? I just wanted to point out that regardless of how many petitions were filed by either side, that still doesn't take away from the fact that a party was in contempt of court for violating the marital settlement agreement. It doesn't take away from the fact that Ryan did not pay things he was ordered to pay under the marital settlement agreement. And again, Tammy's pleadings may have initially had exhibits attached to them that aren't necessarily aligned with the marital settlement agreement. But at trial, Tammy's testimony, at least by Mr. Heller, her own attorney, was streamlined to really only focus on the issues that Ryan really could be held in contempt for. Her testimony focused mainly on the tuition payment, the marital debts that Ryan didn't pay that he was supposed to pay. Again, the MSA was not unambiguous. It was necessary for the court to have a hearing on the MSA to determine where the ambiguities lied and how each party was interpreting the provisions of the marital settlement agreement. And regardless of what Tammy may or may not have testified to at trial, it was still an abuse of discretion that the trial court did not issue a rule to show cause against Ryan based off of Tammy's testimony that he clearly failed to pay payments that were required of him under the party's marital settlement agreement. And while a rule to show cause may have been issued against Tammy for failure to deliver the deeds, there was still no contempt finding on behalf of Tammy. The court never actually held her in contempt. And after the rule to show cause, compliance was secured. Thank you. Any questions at this point? No. Thank you. It's like musical chairs. All right. So I do want to point out, I think that the trial court in finding those, making that initial finding, did somebody violate the court order? I think the evidence that the court heard was that there were, it was unclear from the record that was before it that if Ryan had violated the terms of the MSA by not paying payments, the bills that, the three things that they've talked about, medical bills, tuition, and an accountant's bill, the accountant's bill was in Tammy's name, and it was for her taxes, and it was a bill incurred prior to the date the parties entered into the MSA. I don't think there's anything strange about the court not holding him in contempt when it says she's supposed to pay all of her own individual debts incurred prior to the date of the signing of the MSA. With regard to the tuition payment, Ryan testified that he had paid all the tuition payments that had been presented to him. If you actually look at the exhibits attached to the record, it's not clear if it's even a tuition bill. It just says EIU, and in Charleston, Illinois, everything says EIU on it, including some property management places and things like that, and that's why we filed a motion to strike. We actually filed two, and that's why it was so important that the court heard that motion to strike, which had been properly noticed up to the date of that hearing, and I had asked the court on the date of the hearing that they hear that issue first because it was absolutely germane to what issues would then be relevant to a hearing on a petition for rule to show cause. And then the last one was medical bills. Tammy testified at the hearing that she had stopped getting any sort of collection notices, and Ryan said, yeah, I paid all the bills that I was aware of. So I don't think the record is unambiguous in any way that would show that Judge Parker abused his discretion there. With regard to my issues with where we're claiming abuse of discretion, again, these all relate to things that were explicit in the MSA. Tammy acknowledged she violated them during the hearing and that she knew it was probably wrong to do so but did it anyways. And that's where we're saying I think Judge Parker maybe went too far in trying to be fair. Lastly, I did want to point out the issue with regard to contract interpretation in the motion to strike. It's kind of a strange record, and I think it shows you where Judge Parker had to kind of stretch to reach the conclusion he did in not even mentioning my motion to strike. I said implicitly denying it. He didn't even refer to it in his final order. I think that it had to be addressed. It was, quite frankly, kind of unfair to us to have to go to a hearing and not know what we were going to be arguing about because a lot of those things should have been stricken before we ever got to a hearing on what issues might have actually been relevant to a rule to show cause. So with regard to the sanctions, what exactly are you asking this court to do, to impose sanctions or remand it back for a hearing on whether there should be sanctions or find that there should be sanctions remanded back for the amount of the sanctions? Well, to be quite frank with you, I think my client would be happy if it were remanded back for a hearing on paying his attorney fees for having to defend this. We're not interested in—we need something to, again, really get it through that you can't keep filing rule after rule in a post-judgment case. So we'd be asking the court to remand it for a hearing on attorney fees. We have asked also that the court issue sanctions against her for continuing to file frivolous pleadings. And I'm sorry for not being as fluid with the record because we have four dissolution cases today. Yeah, I understand. Was there a petition for attorney's fees or was it simply a petition for sanctions, a motion for sanctions? There wasn't a specific petition. With my experience with Judge Parker in the past, you ask for it in your response to a motion or in a motion, and then you have a hearing on fees later on, but it was requested in the pleadings. Is it pleadings? It was requested in our petition for rule, and I think even if we hadn't requested it, it's just part of the relief the court customarily can grant with regard to a rule. And just so—to piggyback on what Justice Vaughn asked, because there are some moving parts here. So basically, you're asking for—the motion to strike was not addressed, and that's where you're seeking 137 sanctions. Correct. Conversely, there was the rule you filed, but that was denied. So essentially, you would be asking this court to find that the denial of that is an abuse of discretion, and then that's where you would get the attorney's fees or request the attorney's fees in that issue. Yeah, and just to be clear, the denial—the rule wasn't denied. The rule was issued. The court denied sanctions. So essentially, he didn't hold her in contempt. There was a finding for contempt. There was a finding of issuance of a rule. So typically, I don't know— There wasn't a finding for contempt, though. There wasn't a finding for contempt, no. But a rule was issued because it was clear she was supposed to turn the deeds in five days, and the court issued a rule that did not make a contempt finding. Correct. That's different than a finding. Yes. And that's typically how the judges do it around here. They'll kind of bifurcate the hearing on it, hoping that the parties will reach a resolution. It didn't happen here. Other questions? I thought I had one more, but I think that is it. Okay. Thank you, counsel. Thank you. Obviously, we will take the matter under advisement. We will issue an order in due course.